For plaintiffs: John P. Beagan & J. E. Beagan.

For defendants: Cooncy & Cooney.

Seaboard Flour Corporation
vs. } No. 75310.
William Gluck

### DECISION.
#### July 25, 1929.

FROST, J. This action is before the Court on plaintiff's motion for a new trial after verdict for the defendant.

Suit was brought by the plaintiff corporation to recover from the defendant, a Providence baker, the sum of $384.72, the loss alleged to have been sustained by it as the result of an alleged breach of a contract by the defendant.

In the fall of 1926 plaintiff's representative went to defendant's shop and, after some conversation with defendant, the latter agreed to purchase 200 barrels of T. N. T. flour and 300 barrels of Dakota Maid flour, the flour to be delivered in monthly consignments beginning in October of the same year. The agreement to sell and to purchase was evidenced by a sales slip and was later confirmed by the plaintiff's home office. In October, 1926, 25 barrels of Dakota Maid and 75 barrels of T. N. T. flour were delivered. Other deliveries were subsequently made until all of the T. N. T. brand had been received by the purchaser. The T. N. T. flour proved to be acceptable, but with the first shipment of Dakota Maid, defendant complained that he could not make good bread with this flour; that the flour lacked gluten and, in consequence, the bread came out flat and would not sell. Subsequently, 85 sacks, there being two sacks to a barrel, were taken back and other brands were sent in small quantities, apparently for trial purposes. In March, 1927, it was definitely understood that defendant would accept no more Dakota Maid flour. In January, 1928, the plaintiff sold 194½ barrels of Dakota Maid flour, the amount not accepted by defendant, thereby sustaining a loss of 80 cents per barrel. This loss, together with so-called carrying charges and brokerage charges, constitutes the amount for the recovery of which suit was brought. All of the flour accepted and used by the defendant was paid for by him.

At the trial the plaintiff contended that the sales slip contained all the terms of the agreement entered into by the parties; that it had delivered or offered to deliver Dakota Maid

flour; that the defendant had declined to accept a certain amount of this brand, and that, therefore, under the written terms of the agreement, it had the right to sell such flour as had been refused and charge the loss thereby suffered—in this case eighty cents per barrel—to the defendant, together with carrying charges, so-called, and also broker's fees for selling the same.

The defendant, on the other hand, while he did not dispute the terms of the agreement, contended that he had been induced to enter into the contract by representations that, as it afterwards proved, were fraudulent. He was allowed to show what these representations were. His evidence was that plaintiff's representative had brought with him to defendant's shop a flour bag on which was stamped the name of the brand and the word "guaranteed;" that he had been told at the same time by the same representative that he guaranteed it and would stand behind it.

In the judgment of the Court, if this latter statement was made it constituted something more than mere puffing, something more than the usual optimistic expressions of the salesman as to what his flour would do. If made, it might well have been the deciding factor in making the sale. Of course such a guarantee, if given, would not allow defendant to refuse flour out of mere caprice, but it was not unreasonable on his part to expect and to demand that Dakota Maid flour should make saleable bread, assuming that the bakers were reasonably skilful and the equipment of the bakery suitable for the production of good bread. In this case the defendant, his wife, and an employee, all bakers of experience, testified that the flour lacked gluten, that the bread made from it was flat and they could not sell it.

What representations were made, if any; what was the cause of the poor bread, if it was poor, whether poor flour, lack of skill on the part of the bakers or lack of proper working conditions, temperature, etc., were all questions for the jury, and the jury, after seeing the witnesses and hearing the evidence, decided in favor of the defendant and, the Court thinks, according to the weight of the evidence.

Plaintiff's motion is therefore denied.

For plaintiff: Jonas Sallet.
For defendant: Frank H. Wildes.